UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NASSAU PRECISION CASTING CO., INC.,                     :
                                                        :
                  Plaintiff,                            :           **DECISION AND ORDER**
                                                        :           10-CV-4226 (WFK) (AKT)
            -against-                                    :
                                                        :
                                                        :
ACUSHNET COMPANY, INC., COBRA GOLF                      :
COMPANY, and PUMA NORTH AMERICA,                        :
INC.,                                                   :
                                                        :
                  Defendants.                           :
                                                        :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

   Nassau Precision Casting Co., Inc. ("Plaintiff") brings this action against Acushnet
Company, Inc., Cobra Golf Company, and Puma North America, Inc. ("Defendants") for patent
infringement under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court
previously granted Defendants' motion for summary judgment on the basis of non-infringement.
*Nassau Precision Casting Co., Inc. v. Acushnet Co., Inc.*, 940 F. Supp. 2d 76 (E.D.N.Y. 2013)
(Kuntz, J.). On appeal, the Court of Appeals for the Federal Circuit affirmed this Court's grant
of summary judgment of non-infringement on Claim 2, and vacated and remanded this Court's
grant of summary judgment of non-infringement on Claim 1. *Nassau Precision Casting Co., Inc.
v. Acushnet Co., Inc.*, 566 F. App'x 933 (Fed. Cir. 2014). Defendants now renew their motion
for summary judgment on the bases of non-infringement and invalidity. Dkt. 92 ("D's Mot for
SJ"). Plaintiff cross-moves for partial summary judgment of infringement, arguing that the
Federal Circuit's decision requires a finding of infringement on Claim 1. Dkt. 95 ("P's Mot for
SJ"). For the reasons stated below, Defendants' motion for summary judgment is GRANTED IN
PART and DENIED IN PART, Plaintiff's cross-motion for summary judgment is DENIED, and
Defendants' after-filed motion to strike one of Plaintiff's expert's declarations is dismissed as
MOOT.

**BACKGROUND**

   The Court assumes familiarity with the facts of this action and recounts only a summary

of the disputed patent here. *See generally Nassau Precision Casting Co., Inc. v. Acushnet., Inc.*,

940 F. Supp. 2d 76, 78-83 (E.D.N.Y. 2013) (Kuntz, J.) (hereinafter *Nassau I*).

## A. The Patent-in-Suit

The patent at issue in this action relates to the design of golf iron clubs and specifically to weight distribution within the head of a golf iron club. Dkt. 98-1 ("D's Memo in Support") at 4; Dkt. 94-1 ("'000 Patent") at 1. United States Patent No. 5,486,000 ("the '000 Patent"), titled "Weighted Golf Iron Club Head," is a utility patent which was issued on January 23, 1996 to Robert Chorne and later assigned to Plaintiff. *Nassau I*, 940 F. Supp. 2d at 78; '000 Patent at 1.

For purposes of this current dispute, the only relevant claim in the '000 Patent is Claim 1. *Nassau Precision Casting Co., Inc. v. Acushnet Co., Inc.*, 566 F. App'x 933, 937-38 (Fed. Cir. 2014) (hereinafter *Nassau II*). Claim 1 provides:

> In a golf iron club head of a type having a ball-striking body of weight-imparting construction material inclined at a selected angle for driving a struck golf ball a corresponding selected height during its trajectory, said body having spaced-apart top and bottom surfaces bounding a ball-striking surface there between, the method of improving weight distribution comprising removing construction materials from said top-surface, relocating said removed construction material from said top surface to clearance positions below said top surface located adjacent opposite ends of said bottom, [*sic*] surface whereby said removed construction material from a location not used during ball-striking service of said golf iron, is of no adverse consequence thereto and said removed construction material in said relocated positions contributes to increasing said height attained by a struck golf ball.

'000 Patent col. 4, l. 16–32. The Court previously identified the following four limitations as comprising Claim 1:

- Removing construction material from the top surface of a golf club head, from a location not used during ball-striking service of the golf club head;

- Relocating that removed construction material to clearance positions below the top surface at adjacent opposite ends of the bottom surface;

- Lack of any "adverse consequence" due to such removal and relocation; and

- The removal and relocation contribute to increasing the height attained by a golf ball struck by the club head.

*Nassau I*, 940 F. Supp. 2d at 90; *see* '000 Patent col. 4, l. 16–32. Additionally, Claim 1 also describes a design process rather than a manufacturing process. *See Nassau II*, 566 F. App'x at 939-41. Therefore, to infringe Claim 1 of the '000 Patent, "[p]erformance of the claimed steps by a designer of the accused clubs is . . . required[.]" *Id.* at 940.

Plaintiff alleges that the Cobra S9, Cobra S9 Second Generation, King Cobra UFi, and Cobra S2 clubs (the "Accused Clubs"), manufactured and sold by Defendants since 2006, infringe Claim 1 of the '000 Patent by practicing each of the four limitations of the identified design process. *Nassau I*, 940 F. Supp. 2d at 78; Dkt. 98-25 ("P's 56.1 Statement") at ¶ 15; Dkt. 98-2 ("D's 56.1 Statement") at ¶ 15.

## B. Procedural History

On November 27, 2012, Defendants filed a motion for summary judgment of non-infringement and invalidity. Dkt. 59. Defendants argued that the '000 Patent was invalid because (1) it was anticipated by prior art references, and (2) the term "no adverse consequence" in Claim 1 of the '000 Patent was indefinite. *Id.* at 20-30. Defendants further argued that the Accused Clubs did not infringe the '000 Patent because (1) the Accused Clubs did not engage in an infringing design process; (2) the Accused Clubs did not meet the "no adverse consequence" limitation of Claim 1 of the '000 Patent; and (3) the Accused Clubs did not meet the "determined weight" limitation of Claim 2 of the '000 Patent. *Id.* at 7-20.

On April 17, 2013, this Court granted summary judgment in favor of Defendants. *Nassau I*, 940 F. Supp. 2d 76. The Court found: (1) Claims 1 and 2 of the '000 Patent describe a design process, not a manufacturing process, *id.* at 86-90; (2) the Accused Clubs did not infringe Claim 1 of the '000 Patent because the Accused Clubs did not meet the "location not used during ball-striking service" limitation of Claim 1, *id.* at 90-92; and (3) the Accused Clubs did not

3

infringe Claim 2 of the '000 Patent because the Accused Clubs did not meet the "determined weight" limitation of Claim 2 of the '000 Patent, *id.* at 92-93. The Court did not address the Defendants' claims about the "no adverse consequence" limitation of Claim 1 of the '000 Patent. The Court also dismissed as moot Defendants' counterclaim for invalidity. Dkt. 85 ("Amended Judgment").

On May 8, 2013, Plaintiff filed a notice of appeal to the Federal Circuit. Dkt. 80; Dkt. 81.

On June 6, 2014, the Federal Circuit issued its decision, which affirmed in part, vacated in part, and remanded certain issues to this Court for further proceedings. *Nassau II*, 566 F. App'x 933. The Federal Circuit affirmed this Court's finding that Claim 2 was not infringed by the Accused Clubs. *Id.* at 937. The Federal Circuit also affirmed that Claim 1 and Claim 2 describe design, rather than manufacturing, processes. *Id.* at 939-941. The Federal Circuit, however, vacated this Court's finding of non-infringement with respect to Claim 1. *Id.* at 938. The Federal Circuit held that the Accused Clubs did infringe the "location not used during ball-striking service" limitation of Claim 1 because the Accused Clubs remove "material . . . from areas other than the club head face." *Id.* at 938 (finding Plaintiff's construction and this Court's construction of the limitation both covered the removal of material from the club face). The Federal Circuit noted that Defendants had re-raised their "no adverse consequences" invalidity and non-infringement arguments at the appellate level, and remanded the issue to this Court for review "in the first instance." *Id.* at 941. Thus, the Federal Circuit remanded the case to this Court for determination of (1) whether the Accused Clubs infringe the design process of Claim 1, (2) whether the Accused Clubs infringe the "no adverse consequence" limitation of Claim 1, (3)

whether the "no adverse consequence" limitation is indefinite, and (4) whether the '000 Patent is otherwise invalid. *Id.* at 938, 941.

Defendants filed their renewed motion for summary judgment on October 31, 2014. D's Mot for SJ at 1. That same day, Plaintiff also filed a cross-motion for partial summary judgment on the question of infringement. P's Mot for SJ; Dkt. 95-1 ("P's Memo in Support").

Defendants move for summary judgment because the '000 Patent is invalid, and further because the Accused Clubs do not infringe Claim 1 of the '000 Patent. D's Memo in Support at 7. Specifically, Defendants argue the '000 Patent is invalid because (1) it is anticipated by the prior art, namely the Hogan Magnum golf club, U.S. Patent No. 4,938,470 ("Antonious"), and various prior art marketing materials; and (2) the term "no adverse consequences" in Claim 1 is indefinite because that limitation does not provide an objective standard with which a person of ordinary skill in the art could understand the claim. *Id.* at 7, 12-15, 17-25. Defendants argue the Accused Clubs do not infringe the '000 Patent because (1) the Accused Clubs do not meet the "no adverse consequences" limitation of Claim 1 and (2) the '000 Patent describes and claims a manufacturing process not used in making the Accused Clubs. *Id.* at 7, 15-16.

Plaintiff, on the other hand, argues that the '000 Patent is valid because (1) it is not anticipated by the prior art cited by Defendants, and (2) the "no adverse consequences" limitation is not indefinite because evidence within the Patent itself provides an objective definition of that limitation. Dkt. 98-24 ("P's Memo in Opp.") at 14-30. Plaintiff further argues that the Accused Clubs infringe the '000 Patent because (1) the Federal Circuit's decision requires a finding of infringement of Claim 1; (2) the Accused Clubs meet the "no adverse consequences" limitation of the '000 Patent; and (3) Defendants use an infringing design process. *Id.* at 2-14.

In Plaintiff's separate cross-motion for summary judgment, Plaintiff argues that the Federal Circuit's decision in this case requires a finding of infringement on Claim 1. P's Memo in Support at 3-9. Plaintiff interprets this Court's initial decision, *Nassau I*, 940 F. Supp. 2d at 90-92, as containing an affirmative holding that all of the limitations of Claim 1 other than the "location not used during ball-striking service" limitation were infringed by the Accused Clubs. *Id.* at 5-7. Plaintiff understands *Nassau I* to mean the Court determined that the Accused Clubs infringed all of the other limitations in Claim 1. As Plaintiff correctly notes, the Federal Circuit found in *Nassau II* the "location not used during ball striking" limitation was infringed by the Accused Clubs. *Id.* at 7-8; *see also Nassau II*, 566 F. App'x at 938. If the Court had found in *Nassau I* that the Accused Clubs infringed all of the limitations of Claim 1 other than the "location not used during ball striking" limitation, then the Federal Circuit's decision would mean that the Accused Clubs infringe all of the limitations of Claim 1. Plaintiff therefore asks the Court to conclude that all of the limitations of Claim 1 are infringed by the Accused Clubs based on Plaintiff's understanding of the Court's previous decision.

Defendants oppose Plaintiff's motion on the basis that the Federal Circuit's decision was not determinative of the infringement issue. Dkt. 96 ("D's Memo in Opp.") at 5-9. Instead, Defendants stress that the Federal Circuit specifically remanded the issues related to the "no adverse consequence" limitation in Claim 1 to this Court for determination in the first instance. *See Nassau II*, 566 F. App'x at 938, 940-41. According to Defendants, the Federal Circuit's decision necessitates further non-infringement analysis by this Court. D's Memo in Opp. at 8-9.

## DISCUSSION

## I. Legal Standard

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A), (2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). Statements that are devoid of specifics and evidence that is merely colorable are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

7

## II.  Analysis

The Court turns first to the issue of validity of the '000 Patent because if the patent is invalid, then the Court need not reach the issue of infringement. *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("[A]lthough a judgment of non-infringement does not necessarily moot validity issues . . . a judgment of invalidity necessarily moots the issue of infringement . . . because a determination of infringement applies only to a specific accused product or process, whereas invalidity operates as a complete defense to infringement for any product, forever.") (internal quotation marks and citations omitted).

### A.  Validity of the '000 Patent

When considering a motion for summary judgment, the Court must take into consideration the evidentiary standard of proof that pertains to the trial on the merits. Each claim of a patent is entitled to a presumption of validity. 35 U.S.C. § 282(a). A defendant challenging the validity of a patent must overcome that presumption by establishing the invalidity of the claim by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2244-46 (2011); *see also Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 413 (S.D.N.Y. 2013) (Rakoff, J.). "Clear and convincing evidence is that which gives the finder of fact an abiding conviction that the truth of the proponent's factual contentions is highly probable." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 209 (E.D.N.Y. 2009) (Hurley, J.) (internal quotations, citations, and brackets omitted).

Here, Defendants raise two arguments in support of finding the '000 Patent invalid. First, Defendants argue that the '000 Patent is invalid because it was anticipated by three prior art references. D's Memo in Support at 17-25. Second, Defendants argue that the '000 Patent is

invalid because the "no adverse consequences" limitation of Claim 1 is indefinite. *Id.* at 12-15.
The Court will address each argument in turn.

### 1. Invalidity Based on Anticipation by Prior Art

Defendants argue that the '000 Patent is invalid because it was anticipated by the
following three prior art references: (1) the Hogan Magnum clubs, (2) Antonious, and (3) various
prior art marketing materials. *Id.* at 20-25. Plaintiff claims none of these three references
anticipate the '000 Patent because none include all of the limitations of Claim 1 of the '000
Patent. P's Memo in Opp. at 16-25.

"[U]nder 35 U.S.C. § 102, a patent may be invalid on the basis that it was anticipated by
a prior art." *Nextec Applications v. Brookwood Cos., Inc.*, 703 F. Supp. 2d 390, 421 (S.D.N.Y.
2010) (Holwell, J.) *aff'd* 542 F. App'x 995 (Fed. Cir. 2013). For a patent to be found invalid
because it was anticipated by prior art, a single prior art must disclose "all elements of a claimed
invention arranged as in the claim." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d
1325, 1332 (Fed. Cir. 2010) (internal quotation marks and citations omitted). This requirement
means that "claims cannot be treated as mere catalogs of separate parts, in disregard of the part-
to-part relationships set forth in the claims that give the claims their meaning." *Id.* (internal
quotation marks, ellipses, and citation omitted). "Unless a reference discloses within the four
corners of the document not only all of the limitations claimed but also all of the limitations
*arranged or combined in the same way as recited in the claim*, it cannot be said to prove prior
invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *Id.* (internal
quotation marks and citations omitted.) (emphasis in original).

"Anticipation is a question of fact." *Nextec Applications*, 703 F. Supp. 2d at 421 (citation
omitted). This makes anticipation often inappropriate for summary judgment. "A determination

9

that a claim is anticipated involves a two-step analysis: the first step requires construing the claim, and the second step in the analysis requires a comparison of the properly construed claim to the prior art." *Cognex Corp.*, 990 F. Supp. 2d at 413 (internal quotation marks and citation omitted). "Whether the prior art anticipates every element of the claimed invention depends on the Court's construction of the claim elements in question." *Nextec Applications*, 703 F. Supp. 2d at 421 (citation omitted). "Typically, evidence concerning anticipation takes the form of testimony of one skilled in the art that identifies each claim element, states the witness' interpretation of the claim element, and explains in detail how each claim element is disclosed in the [identified] prior art reference." *Id.* (citation omitted). "Because anticipation required a showing that each element of the claim at issue is found in a single prior art reference, the legally operative comparison is between the patent claims and the item of prior art . . . not between the allegedly infringing product and the item of prior art." *Id.* at 422 (citations omitted).

### a. Hogan Magnum Clubs

Defendants argue that the method used to design the Hogan Magnum clubs anticipates Claim 1 of the '000 Patent. D's Memo in Support at 20. To support their claim, Defendants provide the declaration of their expert, Mr. Peter J. Piotrowski. Dkt. 98-5 ("Piotrowski Dec.") at ¶¶ 67-80. Mr. Piotrowski states that he directed the designing of the Hogan Magnum clubs in the fall of 1984. *Id.* at ¶ 69. He describes the design process of the clubs, which involved "remov[ing] steel from the back of a [earlier] club head, including central portions of the top," "weld[ing] [steel] to the sole of the club, at both the toe and heel." *Id.* at ¶ 72. The outcome of this was a redistribution of the weight on a previous club from the top region to "locations that were lower in the club head and closer to the toe." *Id.* Mr. Piotrowski stresses that "weight was

relocated and redistributed, rather than added (or subtracted)." *Id.* This ultimately resulted in a "desirable increase" of the launch angle degree of a ball when hit with the clubs. *Id.* at ¶¶ 77-80.

Plaintiff provides two arguments in opposition to Defendants' assertion of anticipation. Plaintiff first argues that the testimony of Mr. Piotrowski is insufficient alone to invalidate the '000 Patent and Defendants have failed to provide corroboration for Mr. Piotrowski's testimony. P's Memo in Opp. at 17. Plaintiff acknowledges that Mr. Piotrowski's evidence is supported by a promotional piece about the clubs from a 1985 golf magazine as well as by the clubs themselves, but argues that these pieces of physical evidence reveal nothing about the design process for the clubs, which is what Claim 1 of the '000 Patent protects. *Id.* at 17-18.

At this stage, Plaintiff is correct that Mr. Piotrowski's testimony alone cannot invalidate the '000 Patent. The testimony of one witness is insufficient to invalidate a patent, no matter how credible or on point the witness's testimony may be. *TypeRight Keyboard Corp.*, 374 F.3d at 1159 (citations omitted). Instead, under what is known as the *Barbed-Wire* doctrine, "[c]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent." *Meyer v. Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1376 (Fed. Cir. 2012). The Federal Circuit applies a "rule of reason analysis to determine whether the testimony introduced has been sufficiently corroborated." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1374 (internal citation omitted). Under this analysis, there are eight factors for a court to consider:

> (1) the relationship between the corroborating witness and the alleged prior user,
> (2) the time period between the event and [the giving of the testimony],
> (3) the interest of the corroborating witness in the subject matter in suit,
> (4) [the] contradiction or impeachment of the witnesses testimony,
> (5) the extent and details of the corroborating testimony,
> (6) the witness' familiarity with the subject matter of the patented invention and the prior use,

11

(7) [the] probability that a prior use could occur considering the state of the art at the time, [and]
(8) [the] impact of the invention on the industry, and the commercial value of its practice.

*Id.* (internal citation omitted). Corroboration can be shown through "physical evidence [or] oral testimony of a disinterested party." *TypeRight Keyboard Corp.*, 374 F.3d at 1159 (citation omitted). Physical evidence can include drawings of the patented item and pages from a catalogue selling the patent item, so long as those pieces of evidence pre-date the patent-in-suit. *See Meyer*, 690 F.3d at 1377.

Here, while the Court will not go so far as to say Mr. Piotrowski's testimony is insufficiently corroborated as a matter of law, insufficient evidence regarding the eight corroboration factors has been set forth by both parties. Given the heavy burden of proof that Defendants must meet to show that Claim 1 of the '000 Patent is invalid, the Court finds that Defendants have not met their burden in relation to the prior art of the Hogan Magnum clubs.

Second, Plaintiff argues that the Hogan Magnum clubs do not anticipate Claim 1 because the second limitation of Claim 1 requires that the removed material be relocated to "adjacent opposite ends of said bottom, [*sic*] surface" and the Hogan Magnum clubs place all of the removed material in the toe section only. P's Memo in Opp. at 18-20; *see also* Dkt. 98-3 ("Parente Dep.") at 391:4-9 ("I see a heavy low toe and no weight added to the heel.").

To refute this argument, Defendants point to Plaintiff's expert witness, Richard E. Parente, who stated "I see a thin topline with more weight in the low toe as described and minimal weight in the heel." *Id.* at 395:16-18. Mr. Parente made the concession about "minimal weight" after he stated there was "no weight" added in the heel, but then admitted he had no reason to doubt Mr. Piotrowski's description of the weight of the Hogan Magnum clubs. *Id.* at 391:4-20. According to Defendants, this means the Hogan Magnum clubs practice the limitation

of placing the removed material in "adjacent opposite ends of said bottom, [*sic*] surface," as required by the '000 Patent. Defendants further argue that there is nothing in the '000 Patent to suggest that the material placed at each of the "adjacent opposite ends" must be equal, and therefore recognition by Plaintiff's expert that the Hogan Magnum clubs add some material at each opposite end is sufficient to show anticipation.

Assessing Plaintiff's second argument, the Court finds there is nothing in the second limitation of Claim 1 which requires equal amounts of material to be placed at the referenced "adjacent opposite ends." Defendants have provided testimony from Plaintiff's own expert as well as the clubs themselves for review to support their argument that the Hogan Magnum clubs anticipate this limitation by placing the removed material in "adjacent opposite ends of said bottom, [*sic*] surface." Plaintiff has provided no evidence that the Hogan Magnum clubs do not place the removed material at both opposite ends. Therefore, the Court finds that the Hogan Magnum clubs do anticipate the second limitation in Claim 1, *i.e.* the "relocating that removed construction material to clearance positions below the top surface at adjacent opposite ends of the bottom surface" limitation.

Nonetheless, because Mr. Piotrowski's testimony has not been sufficiently corroborated, Defendants have failed to meet their burden of proof to show there is no material issue of fact as to whether the Hogan Magnum clubs anticipate *every* limitation of Claim 1 of the '000 Patent. *See Therasense, Inc.*, 593 F.3d at 1332 (citations omitted). Therefore, Defendants' motion for summary judgment of anticipation by the Hogan Magnum clubs is DENIED.

### b. Antonious

Defendants next argue that U.S. Patent No. 4, 938, 470, issued on December 23, 1988, to Antonious ("Antonious") anticipates Claim 1 of the '000 Patent. D's Memo in Support at 21.

13

Antonious discloses a process whereby material "removed from the toe portion to form the parallel sighting section" is relocated to a lower position in the club, which is shown in one embodiment as positions adjacent to the toe and the heel of the club. Dkt. 93-5 ("Antonious Patent") at 2:5-16, Figs. 7, 10, 11. Defendants also note that Antonious discloses that the weight of the club head should "remain[] practically unchanged" and that the object of the invention is to "provide improved . . . distance when a golf ball is struck." *Id.* at 2:30-35, 4:4-7. Lastly, Antonious states that the invention "maximizes the chances of hitting the ball on its proper trajectory path," which Defendants interpret as a statement of "no adverse consequence[s]." *Id.* at 5:3-4; '000 Patent at 4:29. The Defendants thus argue that Antonious anticipates all four limitations of Claim 1 of the '000 Patent.

Plaintiff argues that Antonious does not anticipate the '000 Patent because the '000 Patent teaches away from removing a portion of the toe in the patent specification since "a 'toe' hit is part of the game." '000 Patent at 4:3-5. Reading the quoted portion in context, the '000 Patent teaches away from removing any portion of the toe that could hit the ball, and notes in contrast that "a 'top edge' hit with an iron[,] for all practical purposes, never occurs." *Id.* at 4:5-6; *see also Teleflex, Inc. v. Ficosa N. Am., Inc.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002) (noting that "clear statements of scope" in the specification and prosecution history determine the correct claim construction) (internal quotation marks and citation omitted). Removing the top portion of the toe is part of what Antonious discloses when it describes the removed material as "removed from the toe portion to form the parallel sighting section," the sighting section having been identified as "on the uppermost portion of the top ridge towards the toe." *See* Antonious Patent at 1:62-2:16. Antonious also provides images of preferred embodiments in which the top portion of the toe has been removed. *See* Antonious Patent at Figs. 10, 11. Therefore, it seems that the

14

'000 Patent and Antonious are diametrically opposed in their approaches to removing material from the top of the toe -- one discloses removing material from the top of the toe of the club and the other distinctly teaches away from removing any material from the toe of the club at all. The Court therefore DENIES Defendants' motion for summary judgment on anticipation of Claim 1 of the '000 Patent by Antonious.

### c. Prior Art Marketing Materials

Defendants' last anticipation argument is based on numerous examples of prior art marketing materials from the 1970s. D's Memo of Support at 24-25. Defendants' argument boils down to one sentence – "if [Defendants' marketing] materials prove infringement, similar prior art materials invalidate the asserted claims." *Id.* at 25. Defendants make no effort to show that all of the limitations of Claim 1 of the '000 Patent are in a single one of the prior art marketing materials as required by law. *See Therasense, Inc.*, 593 F.3d at 1332. Without evidence that every limitation arranged as in the challenged patent is included in a single prior art reference, Defendants have not met their burden of proof of establishing invalidity by clear and convincing evidence. *Microsoft Corp.*, 131 S.Ct. at 2244-46. Thus, Defendants' motion for summary judgment of anticipation of the '000 Patent by prior art marketing materials is DENIED.

### 2. Invalidity based on Indefiniteness of "No Adverse Consequences"

Defendants also argue Claim 1 of the '000 Patent is invalid because the phrase "no adverse consequences" is indefinite. D's Memo in Support at 4.

"A patent must conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention." *Eidos Display, LLC v. AU Optronics Corp.*, No. 2014-1254, 2015 WL 1035284, at *4 (Fed. Cir. Mar. 10, 2015)

(internal quotation marks omitted) (citing 35 U.S.C. §112). "A lack of definiteness renders invalid the patent or any claim in suit." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2125 (2014). "A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1369-70 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

As an initial matter, "definiteness is to be evaluated from the perspective of someone skilled in the relevant art." *Nautilus, Inc.*, 134 S.Ct. at 2128 (citation omitted). "Second, in assessing definiteness, claims are to be read in light of the patent's specification and prosecution history." *Id.* (citations omitted). "Third, definiteness is measured from the viewpoint of someone skilled in the art *at the time the patent was filed.*" *Id.* (internal quotation marks, brackets, and citation omitted) (emphasis in original).

Ultimately, "[t]he definiteness standard must allow for a modicum of uncertainty to provide incentives for innovation, but also must require clear notice of what is claimed, thereby apprising the public of what is still open to them." *Interval Licensing LLC*, 766 F.3d at 1370 (internal quotation marks, brackets, and citation omitted). "[A] patent does not satisfy the definiteness requirement of [35 U.S.C.] § 112 merely because a court can ascribe *some* meaning to a patent's claims. The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." *Id.* at 1371 (internal quotation marks and citations omitted) (emphasis in original). Further, the Federal Circuit has read the Supreme Court's recent decision in *Nautilus, Inc.*, 134 S.Ct. 2120, as suggesting there may be an indefiniteness problem "if the claim language might mean several different things and

no informed and confident choice is available among the contending definitions. " *Id.* (describing the statements of *Nautilus, Inc.*, 134 S.Ct. at 2130 & n.8 in a parenthetical).

In determining whether a claim is indefinite, general principles of claim construction apply. *See, e.g. Regeneron Pharm., Inc. v. Merus B.V.*, 14-CV-1650, 2014 WL 6611510, at *13, *24 (S.D.N.Y. Nov. 21, 2014) (Forrest, J.) (performing indefiniteness analysis at the claim construction stage); *Secure Web Conference Corp. v. Microsoft Corp.*, 13-CV-2642, 2014 WL 4954644, at *6 (E.D.N.Y. Oct. 2, 2014) (Gleeson, J.) (same).

"[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). When "the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent [even to lay judges]," claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. However, if the meaning of the claim term is not immediately apparent, a court will look to alternate sources such as "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* Extrinsic evidence the court may rely on consists of any other relevant material that was not part of the prosecution history, such as expert and inventor testimony, dictionaries, and learned treatises. *Id.* at 1317. In doing so, a court should be aware that it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (citations omitted).

Defendants argue the term "no adverse consequences" is indefinite because Plaintiff's expert, Mr. Parente, admitted the term is susceptible to subjectivity and the definition of an "adverse consequence" is based on the personal preferences of the individual. For example, Mr.

17

Parente stated the following during his deposition: (1) "Adverse consequence in the patent is just - - it's up to you to understand that it's - - it's less than what you intend"; (2) "It's - - it's going to be - - pretty much adverse consequence is pretty much decided by the individual"; and (3) "There's no defining of the terminology, no." *See* Parente Dep. at 263:18-21, 264:15-17, 264:17-23, 266:6-13. This, Defendants argue, is clear and convincing proof of indefiniteness because Plaintiff's expert cannot provide a specific definition for the term "no adverse consequences" such that every person of ordinary skill in the art reading the '000 Patent would know exactly what was meant.

Plaintiff responds that Defendants cannot rely on extrinsic evidence without disposing of the intrinsic evidence first, and that the term "no adverse consequence" is sufficiently defined in the '000 Patent. P's Memo in Opp. at 27-30. Specifically, Plaintiff identifies "an adverse consequence" as being something that "would occur if removal [of material] were from the toe." *Id.* at 29-30. Plaintiff makes this argument by relying on the following three sections of language from the background and specification sections of the '000 Patent:

(1) "By way of further explanation, for example, if the removed club head portion was from the toe, this would certainly adversely affect the use of the golf club iron because a 'toe' hit is part of the game, even though possibly never intended, because it can and does occur."

(2) "Not only is the removed weight 38 better utilized at location 40 for the ball-striking function intended, but the removal from location 38A noted in Fig. 9 is from the worst location adversely bearing on the efficacy of the club head."

(3) "By way of further explanation, for example, if the removed club head portion is from the toe, this would certainly adversely affect the use of the golf club iron because a 'toe' hit is part of the game, even though possibly never intended, because it can and does occur."

*Id.* (quoting '000 Patent at col. 2, l. 12-18, col. 3, l. 26-29, col. 3, l. 58- col. 4, 1-6).

Plaintiff has shown the clarity of the term "adverse consequences" using the language of the '000 Patent itself, which is more significant than extrinsic evidence in "determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317. The specification language of the '000 Patent provides clarification of the term "adverse consequences" sufficient to inform any person with ordinary skill in the art of what was meant. Two of the three references from the specification indicate that the "adverse consequence" of removing material from the toe because of toe hits is what the '000 patent defines as an "adverse consequence." The third reference goes even further by identifying removing material from the top of club head as the "*worst* location adversely bearing on the efficacy of the club head." *Id.* at col. 3, l. 26-29 (emphasis added). The '000 Patent identifies no other sources of adverse consequences that would lead to a person of ordinary skill in the art being confused about the definition of "adverse consequences."

Summary judgment of the invalidity of an issued patent is rare because of the high burden of proof placed on parties challenging a patent. Here, Defendants have not met that burden. Defendants rely only on extrinsic evidence of testimony by Plaintiff's expert, but this is not as probative as the language of the specification itself and the prosecution history. *See Nautilus, Inc.*, 134 S.Ct. at 2128 (citation omitted) ("[I]n assessing definiteness, claims are to be read in light of the patent's specification and prosecution history."). Because the Court finds that the specification is sufficiently precise to explain to a person of ordinary skill in the art what was meant by "no adverse consequences," it would be inappropriate for the Court to look to extrinsic evidence to contradict the intrinsic evidence of the language of the '000 Patent itself. Therefore, the Court DENIES Defendants' motion for summary judgment of invalidity of Claim 1 of the

'000 Patent based on a finding that the term "no adverse consequences" does not violate the prohibition on indefiniteness.

## B. Infringement of the '000 Patent

Having determined that there are numerous issues of material fact regarding the invalidity of the '000 Patent, the Court turns to the question of whether Claim 1 of the '000 Patent is infringed by the Accused Clubs. *See TypeRight Keyboard Corp.*, 374 F.3d at 1157 (citations omitted).

Infringement can be found in two ways. There can be literal infringement or there can be infringement under the doctrine of equivalents. "A device literally infringes a patent, when it embodies every limitation of the asserted claims. . . . Literal infringement of a claim exists when each of the claim limitations reads on, or in other words is found in, the accused device." *British Telecomms. PLC v. Prodigy Commc'ns Corp.*, 217 F. Supp. 2d 399, 402 (S.D.N.Y. 2002) (McMahon, J.) (internal citations and quotations omitted). Neither party has moved for summary judgment on the issue of infringement under the doctrine of equivalents. Therefore, the Court focuses its inquiry on the question of literal infringement.

A two-step process is required to determine whether a device infringes another's patent. "First, the Court construes the claims to determine their scope and meaning." *Id.* Claim construction is within the sole purview of the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996). In addition to the claim construction principles laid out above regarding the weight of various types of evidence, it is a standard principle of claim construction that "where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to

encompass the feature in question." *Honeywell Int'l, Inc.*, 452 F.3d at 1219. Second, the Court must "compare the allegedly infringing device against the claims as construed to determine whether the device embodies every limitation of the claims." *British Telecomms. PLC*, 217 F. Supp. 2d at 402 (citing *Cybor Corp.*, 138 F.3d at 1454).

"'Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *U.S. Philips Corp.*, 505 F.3d at 1374-75 (quoting *PC Connector Solutions LLC*, 406 F.3d at 1364). Further, "[i]t is clear that an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." *Paone v. Microsoft Corp.*, 881 F. Supp. 2d 386, 400 (E.D.N.Y. 2012) (Spatt, J.) (internal quotation marks omitted) (citing *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995)).

Plaintiff and Defendants both move for summary judgment on the issue of whether the Accused Clubs infringe Claim 1 of the '000 Patent. As previously mentioned, Claim 1 is comprised of four separate limitations:

- Removing construction material from the top surface of a golf club head, from a location not used during ball-striking service of the golf club head;

- Relocating that removed construction material to clearance positions below the top surface at adjacent opposite ends of the bottom surface;

- Lack of any "adverse consequence" due to such removal and relocation; and

- The removal and relocation contribute to increasing the height attained by a golf ball struck by the club head.

*Nassau I*, 940 F. Supp. 2d at 90; *see* '000 Patent col. 4, l. 16–32. In addition to the four limitations, Claim 1 also describes a design process rather than a manufacturing process, which

means that "[p]erformance of the claimed steps by a designer of the accused clubs is . . . required" for a finding of infringement. *Nassau II*, 566 F. App'x at 939-41.

In their respective summary judgment motions, the parties moved for summary judgment in relation to (1) the "no adverse consequences" limitation of Claim 1 and (2) the infringing design process described by Claim 1. The Court will address each issue in turn.

### 1. "No Adverse Consequences" Limitation of Claim 1

As discussed above in relation to the issue of indefiniteness, the Court construes "adverse consequences" to mean "the consequences of removing material from the toe of the club." As such, to infringe upon Claim 1 of the '000, a golf iron club must avoid removing material from the toe of a club. A golf club iron in which material is actually removed from the toe of the club, therefore, cannot infringe Claim 1 of the '000 Patent. *See Honeywell Int'l, Inc.*, 452 F.3d at 1219.

Defendant argues that the Accused Clubs do not infringe Claim 1 of the '000 Patent because all four of the Accused Clubs remove material from the toe of the club, as opposed to avoiding the removal of material as required by Claim 1 of the '000 Patent. D's Memo in Support at 16-17. Moreover, the Accused Clubs then replace the removed material with an insert of a different, lighter-weight material. *Id.*

Plaintiff argues that the Accused Clubs infringe Claim 1 of the '000 Patent because none of the Accused Clubs remove material in a way that changes the profile of the toe of the club head, thereby establishing "no adverse consequence." P's Memo in Opp. at 11, 13. In other words, because the face of the club looks the same, the Accused Clubs infringe the "no adverse consequence" limitation of Claim 1 of the '000 Patent.

However, the Court's construction of the term "no adverse consequence" requires only that construction *material* be removed from the toe of the club. It does not require that this removal be from the face of the club. Furthermore, the Federal Circuit specifically found "from a location not used during ball-striking service" limitation of Claim 1 to mean "removed construction material must be from areas other than the club head face." *Nassau II*, 566 F. App'x at 938. This Court cannot modify the claim construction of "no adverse consequence" limitation to conflict with the "location not used during ball-striking service" limitation. As the Federal Circuit has made clear, "proper claim construction demands interpretation of the entire claim element in context, not a single element in isolation." *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) (internal quotation marks, ellipses, brackets and citation omitted). Therefore, the Court reiterates that any golf club iron in which material is removed from any part of the toe of the club, as opposed to any golf club iron in which material is removed from the face of the toe of the club, cannot infringe Claim 1 of the '000 Patent.

It is evident to the Court that two of the Accused Clubs, the Cobra S9 Second Generation and the Cobra S2, remove material from the toe of the club. For example, Defendant has provided official company pictures which identify the different components of each of the Accused Clubs. *See* D's Memo in Support at 17 (photos of the accused clubs); Dkt. 101-12 ("Accused Clubs I") at 8 (materials about the Cobra S9); Dkt. 101-13 ("Accused Clubs II") at 18 (same); Dkt. 101-14 ("Accused Clubs III") at 2 (materials about the Cobra S2). These pictures show that material is removed from a specific section of the toe of the club and that the removed material is then replaced with a lighter weight insert. D's Memo in Support at 17; Accused Clubs I at 8 (materials about the Cobra S9); Accused Clubs II at 18 (same); Accused Clubs III at 2 (materials about the Cobra S2).

Given the Court's construction of "adverse consequences," Claim 1 of the '000 Patent cannot be infringed by any golf iron club in which material is removed from the toe of the club. Defendants have provided clear evidence that the Cobra S9 Second Generation and the Cobra S2 remove material from the toe of the club. Plaintiff has not refuted this evidence. Therefore, the Court finds that the Cobra S9 Second Generation and the Cobra S2 do not infringe Claim 1 of the '000 Patent.

The other two Accused Clubs, the King Cobra UFi and the Cobra S9, remove material from the center back base of the club head and replace that material with a lighter weight insert. D's Memo in Support at 16 (diagrams of the accused clubs); *see also* Accused Clubs I at 6 (materials about the King Cobra UFi); Accused Clubs II at 17 (materials about the King Cobra UFi). The area from which this material is removed could be considered the toe of the club, but it could arguably be considered not the toe of the club. Without more, this would create a material issue of fact vis à vis these two Accused Clubs under the Court's construction of the term "adverse consequences."

The Court, however, need not determine whether this material is removed from the toe or not because the removal of material from the center back base of the club head is clearly not covered by the claims of the '000 Patent. As the '000 Patent specification explains:

> [I]t is noted that it is common practice in the manufacture of golf club irons to embody, by removal of construction material, a rear area 42, as best illustrated in Fig. 10, and redistribute the weight occasioned by this removal to other club head areas, such as the heel 16, toe 20, or sole and bottom edge 26. But this is counterproductive, particularly with respect to the lower region of the recess 42, since said lower region favorably contributes to locating the sweet spot plane 34 in an optimum position for ball striking, and thus said lower region area should not have been removed for weight distribution purposes.

*See* '000 Patent at col. 3, l. 31-41. This language of the specification evidences that the '000 Patent does not cover removing material from the center back base of the club head since the

Patent clearly states "said lower region area should *not* have been removed for weight distribution purposes. *Id.* (emphasis added). Therefore, because the King Cobra UFi and the Cobra S9 do exactly what the specification of the '000 Patent indicates is outside of its claim scope, these two Accused Clubs also do not infringe Claim 1 of the '000 Patent. *See Honeywell Int'l, Inc.*, 452 F.3d at 1219.

Accordingly, the Court finds that none of the Accused Clubs infringe the "no adverse consequences" limitation of Claim 1 of the '000 Patent because the Accused Clubs all engage in actions which the '000 Patent explicitly does not condone. Thus, the Court GRANTS Defendants' motion for summary judgment of non-infringement of the '000 Patent.

### 2. Infringing Design Process under Claim 1

Plaintiff and Defendants cross-moved for summary judgment on the question of whether Defendants' design process infringed the design process described in Claim 1 of the '000 Patent. The Court, however, has already determined that the Accused Products do not meet the "no adverse consequences" limitation of Claim 1. Because a product only infringes a patent "when it embodies every limitation of the asserted claims," the Court finds this issue is MOOT. *See British Telecomms. PLC*, 217 F. Supp. 2d at 402 (internal citations and quotations omitted).

### C. Motion to Strike Declaration of Mr. Robert Chorne

After both parties had filed their motions for summary judgment, Defendants filed a motion to strike the declaration of Plaintiff's expert Mr. Robert Chorne on the basis that his expert opinion was improper and had not been timely submitted. Dkt. 102 ("Motion to Strike"); Dkt 103 ("Memo on Mot. to Strike") at 5-7. Having already granted judgment on the issues of invalidity and non-infringement in favor of Defendants without relying on Mr. Chorne's declaration, the Court finds that Defendants' motion to strike is MOOT.

## CONCLUSION

On the basis of the law and facts as set out above, the Court DENIES Defendants' motion for summary judgment of invalidity, and GRANTS summary judgment in favor of Defendants on the issue of non-infringement of the '000 Patent. The Court therefore DENIES Plaintiff's cross-motion for summary judgment on the issue of infringement. The Court also dismisses Defendants' motion to strike the declaration of Mr. Robert Chorne as MOOT. The Clerk of Court is directed to enter judgment for Defendants that the Accused Clubs do not infringe the '000 Patent, and to close the case.

**SO ORDERED**

Dated: Brooklyn, New York
April 2 , 2015

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge